IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

CA. NO. 03-10426

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | USDC CR. NO. 02-00315 SOM |
| | ) | (D. Hawaii) |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEITH K. AKANA | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

BRIEF OF PLAINTIFF-APPELLEE
UNITED STATES OF AMERICA

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

LAWRENCE L. TONG
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
P.O. Box 50183
Honolulu, Hawaii  96850
Telephone: (808) 541-2850

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

**PAGE**

I.    JURISDICTION, TIMELINESS OF APPEAL AND BAIL STATUS . . . . 1

II.   ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . 1

III.  STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . 1

    A.   Nature of Case and Proceedings Below . . . . . . . . 1

    B.   Factual Background . . . . . . . . . . . . . . . . . 4

        i.     The Offense Conduct . . . . . . . . . . . . . 4

        ii.    The Indictment and Plea Agreement . . . . . . 7

        iii.   The Change of Plea Hearing . . . . . . . . . . 8

        iv.    The Draft Presentence Report . . . . . . . . 12

        v.     The Alleged Breach of Plea Agreement . . . . 13

        vi.    The Government's Response . . . . . . . . . . 13

        vii.   The May 12, 2003 Sentencing Hearing . . . . . 15

        viii.  The July 18, 2003 Sentencing . . . . . . . . 18

IV.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . 20

V.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 21

    A.   The Government Did Not Breach The Plea
       Agreement By Providing Full Information About
       Defendant's Activities To The Court. . . . . . . . 21

        1.   Standard of Review . . . . . . . . . . . . . 21

        2.   Argument . . . . . . . . . . . . . . . . . . 22

    B.   The Government Did Not Charge Defendant With
       The Distribution Of Child Pornography, And
       There Was No Constructive Amendment Or
       Variance To The Indictment. . . . . . . . . . . . 26

        1.   Standard of Review . . . . . . . . . . . . . 26

**TABLE OF CONTENTS**
(Continued)

                                                                              **PAGE**

       2.   Argument . . . . . . . . . . . . . . . . . . . 26

   C.   The Government Concedes It Breached The Plea
       Agreement By Supporting The Probation
       Office's Calculations, But Submits That
       Defendant Waived This Claim By Abandoning It
       In The District Court. . . . . . . . . . . . . . . 30

       1.   Standard of Review . . . . . . . . . . . . . 30

       2.   Argument . . . . . . . . . . . . . . . . . . . 31

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . 38

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

Santobello v. New York,
    404 U.S. 257 (1971)  . . . . . . . . . . . . . . . . .  33

Stirone v. United States,
    361 U.S. 212 (1960)  . . . . . . . . . . . . . . . . .  27

United States v. Alvarez,
    972 F.2d 1000 (9th Cir. 1992), cert. denied,
    507 U.S. 977 (1993)  . . . . . . . . . . . . . . . . .  27

United States v. Fisch,
    863 F.2d 690 (9th Cir. 1988)  . . . . . . . . . . . . .  22

United States v. Flores-Payon,
    942 F.2d 556 (9th Cir. 1991)  . . . . . . . . . . . 29, 30

United States v. Helmandollar,
    852 F.2d 498 (9th Cir. 1988)  . . . . . . . . . . . 21, 22

United States v. Horn,
    187 F.3d 781 (8th Cir. 1999), cert. denied,
    529 U.S. 1029 (2000) . . . . . . . . . . . . . . . . .  14

United States v. Johnson,
    221 F.3d 83 (2d Cir. 2000), cert. denied,
    533 U.S. 953 (2001)  . . . . . . . . . . . . . . . . .  14

United States v. Lacy,
    119 F.3d 742 (9th Cir. 1997), cert. denied,
    523 U.S. 1101 (1998) . . . . . . . . . . . . . . . . .  24

United States v. Maldonado,
    215 F.3d 1046 (9th Cir. 2000), cert. denied,
    531 U.S. 1172 (2001) . . . . . . . . . . . . . . . . .  22

United States v. Manarite,
    44 F.3d 1407 (9th Cir. 1995), cert. denied,
    515 U.S. 1158 (1995) . . . . . . . . . . . . . . . 31, 35

United States v. Montoya,
    782 F.2d 1554 (11th Cir. 1986)  . . . . . . . . . . 31, 35

## TABLE OF AUTHORITIES
### (Continued)

**PAGE(S)**

**CASES**:

United States v. Mukai,
    26 F.3d 953 (9th Cir. 1994)  . . . . . . . . . . . . . . . 8

United States v. Olano,
    507 U.S. 725 (1993)  . . . . . . . . . . . . . . . . . . 35

United States v. Parmelee,
    319 F.3d 583 (3d Cir. 2003)  . . . . . . . . . . . . . . 14

United States v. Paul,
    274 F.3d 155 (5th Cir. 2001), cert. denied,
    535 U.S. 1002 (2002) . . . . . . . . . . . . . . . . 14, 30

United States v. Pisello,
    877 F.2d 762 (9th Cir. 1989) . . . . . . . . . . . . . . 26

United States v. Saxena,
    229 F.3d 1 (1st Cir. 2000) . . . . . . . . . . . . . . . 22

United States v. Visman,
    919 F.2d 1390 (9th Cir. 1990), cert. denied,
    502 U.S. 969 (1991) . . . . . . . . . . . . . 30, 31, 36

United States v. Von Stoll,
    726 F.2d 584 (9th Cir. 1984) . . . . . . . . . . . 27, 28

United States v. Vowiell,
    869 F.2d 1264 (9th Cir. 1989)  . . . . . . . . . . . . . 28

**STATUTES AND RULES**:

18 U.S.C. § 2252(b)(1)  . . . . . . . . . . . . . . . . . . 7, 27

18 U.S.C. § 2252(b)(2)  . . . . . . . . . . . . . . . . . . 7, 27

## TABLE OF AUTHORITIES
### (Continued)

**PAGE(S)**

**OTHER AUTHORITIES:**

United States Sentencing Guidelines § 1B1.3 . . . . . . . . .   30

United States Sentencing Guidelines § 1B1.3(a)(1)(A)(2001 ed.) 29

United States Sentencing Guidelines § 1B1.4 (2001 ed.)  . . .  29

United States Sentencing Guidelines § 2B2.4(b)(3) . . . . . . . 8

United States Sentencing Guidelines § 2G2.2 . . . . . . . passim

United States Sentencing Guidelines § 2G2.2(b)(1) . . . . . .  12

United States Sentencing Guidelines § 2G2.2(b)(2)(B)  . . . .  12

United States Sentencing Guidelines § 2G2.2(b)(3) . . . . . .  13

United States Sentencing Guidelines § 2G2.4 . . . . .  13, 14, 32

United States Sentencing Guidelines § 2G2.4(b)(1) . . . . . . . 8

United States Sentencing Guidelines § 2G2.4(b)(2) . . . . . . . 8

United States Sentencing Guidelines § 2G2.4(c)(2) . . . .  12, 32

United States Sentencing Guidelines § 2G2.4 . . . . . .  7, 8, 12

v

## BRIEF OF PLAINTIFF-APPELLEE UNITED STATES

### I.   JURISDICTION, TIMELINESS OF APPEAL AND BAIL STATUS

The United States accepts defendant's statements of jurisdiction, timeliness of appeal and bail status.

### II.   ISSUES PRESENTED

Whether the government was entitled to provide full information to the court for sentencing purposes.

Whether there was a constructive amendment of the indictment where defendant pled guilty to the possession of child pornography, but the court applied the sentencing guideline applicable to the trafficking of child pornography based on defendant's offense conduct.

Whether defendant waived his claim that the government breached the plea agreement where he voluntarily abandoned that claim in the district court.

### III. STATEMENT OF THE CASE

#### A.   Nature of Case and Proceedings Below

On July 17, 2002, a federal grand jury in the District of Hawaii returned a one count indictment against defendant Keith K. Akana.  See defendant's excerpts of record (ER) at 1-2.  The indictment charged that, on or about April 13, 2002, defendant possessed computer graphic files which contained child pornography and had been transported in interstate commerce.  ER 1-2.

1

On September 20, 2002, defendant pled guilty to the charge pursuant to a memorandum of plea agreement with the United States. ER 3-11. The government agreed not to charge defendant with the distribution of child pornography. The plea agreement explicitly said the government would provide all available information to the court. The plea agreement contained various guideline stipulations, and provided that the stipulations were not binding upon the court. The agreement also provided that defendant waived his right to appeal from any sentence within the statutory maximum, unless the court departed upward from the applicable guideline range.

Based on the guideline stipulations, the government and defendant expected the applicable sentencing range to be 27-33 months. The draft presentence report, however, calculated the applicable guidelines at a higher range of 46-57 months. This range was based on probation's determination that defendant had distributed, as well as possessed, child pornography. This determination was based on defendant's statements to agents, as reflected in investigative reports provided to the probation office.

Defendant filed an opposition to the draft presentence report. Defendant argued that the government had stipulated to the application of the guideline for the possession of child pornography, and had promised not to charge him with a

2

distribution offense. Defendant thus argued that the government had breached the plea agreement by providing information which could trigger the cross reference to the trafficking guideline.

The government filed a responsive memorandum. It noted that defendant had not been charged with the distribution of child pornography. The government also noted that the plea agreement explicitly stated that the government would provide full information to the court. Finally, the government freely conceded that the parties had expected the application of the possession guideline, and a resulting sentencing range of 27-33 months. The government said, however, that it had reviewed the case law after the issuance of the draft presentence report and determined that the probation office's application of the trafficking guideline was legally correct. The government thus indicated that, while the parties had expected a lower guideline range, the range calculated by the probation office was appropriate. The government concluded by asking that defendant receive the lowest end of the applicable guideline range, since it was greater than what had been anticipated.

On May 12, 2003, defendant appeared for sentencing. In view of the claimed breach of plea agreement, the court asked whether defendant sought to withdraw his guilty plea. Defendant responded negatively. Defense counsel instead argued that the government should have stood silent when the probation office

3

issued its report. Defense counsel also suggested that the application of the trafficking guideline was not factually justified. The court then gave defendant additional time to review the case and his objections.

On July 18, 2003, defendant was sentenced. At the hearing, defendant did not reassert the claimed breach of plea agreement, or seek specific performance or to withdraw his guilty plea. Defendant instead withdrew his objection to the application of the trafficking guideline, and agreed that the guideline range was 46-57 months. Defendant also sought a downward departure based on his poor health. The court denied defendant's motion and sentenced him to 46 months, the bottom of the range.

Defendant now appeals, arguing that the government breached the plea agreement by agreeing that the probation office's application of the guidelines was correct.

B.   Factual Background

i.   The Offense Conduct

This case arose out of a child pornography investigation involving a Wisconsin man named James Dix. The U.S. Customs Service determined that Dix, using the screen name of "Jamesou812@aol.com," had traded child pornography over the Internet with other individuals. By tracing the screen names of those individuals, investigators determined that one of those

4

persons was defendant Keith K. Akana of Hawaii. See Presentence Report (PSR) at paras. 8-9.

On April 30, 2002, Customs agents spoke with defendant. Defendant said he had a masters degree in education, and was a fourth grade public school teacher. PSR at para. 10. Defendant admitted receiving approximately 40 to 50 computer images of child pornography which he believed depicted actual minors. He said he retained these images on his laptop computer. Defendant said the computer had "crashed" approximately two weeks earlier, and had been too costly to repair. According to defendant, he was glad the computer crashed because he had followed recent Supreme Court decisions, and knew that the possession of child pornography was wrong. Id., para. 11; Transcript of Proceedings (TR) 9/20/02 at 17-27, reproduced in government's Supplemental Excerpts of Record (SER) at 42-52.

Defendant told agents how he had obtained the child pornography. Defendant said he visited a chat room named "bidad," where he swapped child pornography with others. Defendant estimated swapping images about 20 times with other persons, with each incident usually consisting of the exchange of between 5-10 images. Defendant stored the images in a folder named "Pics." He maintained a "buddy list" on his computer, which contained the screen names of persons with whom he had swapped child pornography. Defendant admitted swapping images

5

with "jamesou812," the screen name used by Dix in Wisconsin, and using the screen name which had been found on Dix's computer. PSR, para. 12.

Defendant signed a consent form authorizing agents to search his personal computer. Agents determined that the computer contained about 1,000 pornographic images. The images included approximately 395 still images and three movies containing child pornography. The images depicted minor boys engaged in sexual acts with each other. PSR at para. 14.

On April 30, 2002, defendant also signed a consent form authorizing his Internet Service Provider, America Online (AOL), to disclose account and transactional data. AOL indicated that it retained received e-mails for only two days after they were opened by its subscribers. It retained sent e-mails and attachments for 28 days. As defendant's computer had crashed in mid-April, his AOL account would only contain transactional data for the first half of the month. AOL nonetheless provided three e-mails sent by defendant on April 13, 2002 to two different individuals. The e-mails had attachments consisting of approximately 15 images of juvenile boys having sex or displaying their genitals. The e-mails also had subject headers indicating a desire to trade for similar images. PSR at para. 15.

### ii. The Indictment and Plea Agreement

On July 17, 2002, a federal grand jury returned a one count indictment against defendant. The indictment charged that, on or about April 13, 2002 (the date he sent images to others), defendant possessed child pornography. ER 1-2.

On September 20, 2002, defendant pled guilty pursuant to a plea agreement with the United States. SER 1-9. The agreement provided that, based upon the information then known to the United States, the United States Attorney for the District of Hawaii would not charge defendant with any distribution of child pornography offenses related to events which occurred prior to the agreement.[1] SER 2. The agreement contained a brief summary of the offense conduct. It recited that defendant had accessed Internet chat rooms, downloaded files which he knew were child pornography, and saved them to his computer hard drive. The agreement recited that on or about April 13, 2002, defendant knew he had such files on his computer. SER 3-4.

The plea agreement also contained stipulations to the sentencing guidelines. The parties stipulated that the base offense level was 15 under United States Sentencing Guidelines (U.S.S.G.) § 2G2.4. SER 4. The parties further agreed that

---

[1] Each such offense would have carried a statutory maximum penalty of 15 years. See 18 U.S.C. § 2252(b)(1). By contrast, the possession charge to which defendant pled guilty carried a statutory maximum penalty of five years. 18 U.S.C. § 2252(b)(2).

7

defendant possessed more than ten items containing child
pornography, that he had images of prepubescent children, and
that the offense resulted from the use of a computer.[2]  The plea
agreement provided that the court was not bound by any of these
stipulations, but would independently determine the facts
applicable to sentencing.  SER 4-5.  The agreement also provided
that the court's rejection of any stipulation would not
constitute a refusal to accept the plea agreement itself.[3]  SER
9.  Finally, the plea agreement provided that the government
would fully advise the court and probation office of "the nature,
scope and extent of Defendant's conduct regarding the charges
against him, related matters, and any matters in aggravation or
mitigation relevant to the issues involved at sentencing."  Id.

### iii. The Change of Plea Hearing

On September 20, 2002, defendant appeared for a change
of plea hearing.  During the Rule 11 colloquy, the government

---

[2]    The parties thus expected the offense level would be
18, which consisted of a base offense level of 15 (U.S.S.G. §
2G2.4), +2 levels for more than ten items (U.S.S.G. §
2G2.4(b)(2)), +2 levels for images of prepubescent children
(U.S.S.G. § 2G2.4(b)(1)), +2 levels for the use of a computer
(U.S.S.G. § 2B2.4(b)(3)), -3 levels for early acceptance of
responsibility.  With a criminal history category of I, this
translated into a 27-33 month guideline sentencing range.

[3]  Defendant suggests the government "stipulat[ed] to a
specific sentence."  Def. Brief at 6.  That is not so.  The plea
agreement contained stipulations to certain guidelines.  It did
not set forth a stipulated sentence which would become binding
once the court accepted the agreement.  c.f. United States v.
Mukai, 26 F.3d 953, 955 (9th Cir. 1994).

8

recited the parties' stipulations as to the guidelines. The court then advised defendant that it was not bound by the parties' stipulations, and that it might impose a sentence higher than what defendant expected Defendant said he understood and wished to go forward. See Transcript of Proceedings (TR) 9/20/02 at 8-9, SER 33-34.

The court then asked the government to summarize the evidence supporting the charge. The government said it would have presented evidence that defendant accessed Internet chat rooms, where he downloaded child pornography and saved it to his computer. The government said its evidence would further show that, on April 13, 2002, defendant knew he had such images on his computer, and that such images had been transported in interstate commerce, or saved using equipment which had been transported in interstate commerce. Id. at 15-16, SER 40-41.

When the court asked whether he agreed with the recitation, defendant equivocated. Defendant said he had difficulty both with the date on which he possessed images, and "just the idea that I knew I had the files at that time." TR 9/20/02 at 16-17, SER 41-42. The court then had a colloquy with the parties about when defendant had possessed child pornography. In order to fix the date, the government advised the court of how the investigation had unfolded. It noted that defendant's name came to the attention of the U.S. Customs Service after an

9

investigation of the Wisconsin individual.  Agents spoke with
defendant on April 30, 2002.  Defendant admitted he was the
person whose screen name appeared on the Wisconsin individual's
buddy list, and that he had traded images with him.  Defendant
also said he had downloaded child pornography from chat rooms,
and saved it to his computer.  Defendant's computer had
"crashed," or become inoperable about two weeks earlier, in the
middle of April 2002.  Defendant did not repair the computer
because the cost was prohibitive.  Id. at 18-19, SER 43-44.

        The agents thereafter obtained the contents of
defendant's account with AOL.  AOL turned over approximately 17
images of child pornography which were in defendant's account
between the beginning of April 2002 and April 13, 2002.[4]  A
forensic examination of defendant's computer later revealed the
presence of approximately 400 images of child pornography.  The
government thus suggested that the evidence showed that, in the
middle of April 2002, defendant knowingly possessed child
pornography.  Id. at 19-20, SER 44-45.

        Defense counsel responded to this recitation by
questioning when defendant's computer had crashed.  He said that

---

[4]    As noted above, AOL's retention policy made it
impossible to obtain transactional information more than 30 days
old.  Since defendant consented to the disclosure of his AOL
account on April 30, 2002, the government could only get data
from the beginning of April.  As defendant did not have use of
his computer after mid-April, the data provided by AOL only
reflected activity during the first two weeks of the month.

10

defendant's hard drive had crashed on April 18, 2002.  According
to defense counsel, defendant was under the impression that, once
his computer crashed, he no longer had possession of child
pornography graphics files.  Id. at 20, SER 45.

At this point, the court said the date when defendant
possessed images seemed to be an issue, and turned to the
government.  The prosecutor said, "I can be even more explicit if
it will help."  The government said AOL had turned over three e-
mails dated April 13, 2002 which defendant had sent to others.
The e-mails had header messages referencing the trading of child
pornography.  Thus, according to the government, defendant had
possession of child pornography as of April 13, 2002, the date on
which he sent the three e-mails.  Id. at 21, SER 46.

The court allowed defendant to confer with his counsel
about this evidence.  Following a break, defendant continued with
the guilty plea.  He admitted possessing child pornography at
some point in April 2002.  Id. at 23-24, SER 48-49.  Defendant
still was not be specific about the date.  He did, however, admit
possessing images which he knew constituted child pornography
before his computer crashed in April 2002.  The court then asked,
"Were you sending any to anybody?"  Defendant said, "Yeah, I
believe I did, yes."  Id. at 25-26, SER 50-51.  Defendant then
pled guilty to possessing child pornography as alleged in the
indictment.

11

iv.   The Draft Presentence Report

The U.S. Probation Office issued a draft presentence
report (PSR).  It recited the parties' stipulations concerning
the applicable guidelines.  The draft PSR, however, calculated
the guidelines differently.  The draft PSR agreed that possession
of child pornography offenses were governed by U.S.S.G. § 2G2.4,
the guideline cited by the parties.  The report pointed out,
however, that U.S.S.G. § 2G2.4(c)(2) contained a cross-reference
mandating the application of § 2G2.2 "[i]f the offense involved
trafficking in material involving the sexual exploitation of a
minor[.]" Based on investigative reports of the U.S. Customs
Service,[3] the PSR noted that defendant had sent and received
images while in Internet chat rooms.  PSR, paras. 8, 22.  The PSR
concluded that since the offense involved the receipt and
transport of child pornography, the applicable guideline was
U.S.S.G. §2G2.2, which contained a higher base offense level of
17, rather than 15.

The PSR also applied certain enhancements under
U.S.S.G. § 2G2.2: (1) two levels under § 2G2.2(b)(1) because the
material involved prepubescent minors or minors under the age of
12; (2) five levels under § 2G2.2(b)(2)(B) because defendant sent

---

[3]   The "Offense Conduct" portion of the PSR began with,
"The investigation into the instant offense was conducted by the
U.S. Customs Service (USCS).  According to USCS investigative
reports ..."  PSR, para. 8.  Such investigative reports had been
given the probation office by the government.

12

images to others with the expectation of receiving other images in return; and (3) two levels under § 2G2.2(b)(3) because a computer was used. PSR, paras. 23-26. After deducting three points for early acceptance of responsibility, the PSR calculated the offense level as 23, criminal history category I, which resulted in a guideline range of 46-57 months. PSR, paras. 35, 38, 58.

### v. The Alleged Breach of Plea Agreement

On April 11, 2003, defendant filed an opposition to the draft PSR. CR 19, SER 10-14. Defendant essentially objected to the application of U.S.S.G. § 2G2.2. He argued that the base offense level should have been 15 under U.S.S.G. § 2G2.4, as stipulated to in the plea agreement. He also argued that, since the government agreed not to charge him with trafficking, the court should not apply the trafficking guideline under § 2G2.2. Finally, defendant argued that the government had violated the plea agreement by providing information to the probation office which could be used to increase his offense level. According to defendant, the government was prohibited from providing any information which could be used in a way contrary to the parties' guideline stipulations.

### vi. The Government's Response

On May 5, 2003, the government filed a response to defendant's memorandum. CR 20, SER 15-25. The government freely

13

agreed that the parties had anticipated that U.S.S.G. § 2G2.4 would apply, and that the base offense level would be 15.  The government noted, however, that both parties had overlooked the cross-reference to U.S.S.G. § 2G2.2, the trafficking guideline. The government said it later reviewed the probation office's application of the cross-reference and determined it was consistent with the case law.[4]  The government also denied breaching the plea agreement by providing information to the probation office, as the plea agreement provided that the government would advise the court of "the nature, scope and extent of Defendant's conduct ... and any matters in aggravation or mitigation[.]"  Finally, the government denied charging defendant with the distribution of child pornography.  The government pointed out that, as a result of the plea bargain, defendant faced a statutory maximum penalty of only five years,

---

[4]     The government advised the court that several circuit courts have held that a defendant's sentence may be enhanced for the distribution of child pornography, even if he pled guilty only to a possession offense.  The government cited a variety of cases which established this proposition.  See e.g., United States v. Johnson, 221 F.3d 83 (2d Cir. 2000), cert. denied, 533 U.S. 953 (2001); United States v. Horn, 187 F.3d 781 (8th Cir. 1999), cert. denied, 529 U.S. 1029 (2000); United States v. Paul, 274 F.3d 155 (5th Cir. 2001), cert. denied, 535 U.S. 1002 (2002); and United States v. Parmelee, 319 F.3d 583 (3d Cir. 2003).  SER 20-21.  As will be demonstrated below, defendant never challenged this principle.  In fact, defendant later conceded that the cross-reference to the trafficking guideline would apply if there were evidence that he traded images.  His focus instead shifted from the legal application of the guideline to whether the evidence supported the factual conclusion that he distributed images.

14

rather than a maximum of 15 years as to each potential
distribution count.

        vii. The May 12, 2003 Sentencing Hearing

        The case was set for sentencing on May 12, 2003.  Prior
to the hearing, the probation office issued a final PSR.  The PSR
acknowledged defendant's objections, but continued to apply
U.S.S.G. § 2G2.2, the trafficking guideline.  The PSR noted the
application was appropriate because "[d]efendant admitted to law
enforcement that he received and transmitted child pornography
over the internet."  PSR at 2A.

        On May 12, 2003, the court began a sentencing hearing.
The court began by addressing defendant's objections to the draft
PSR.  The court confirmed that defense counsel had received the
government's responsive memorandum, and the probation office's
response.  TR 5/12/03 at 1-3, SER 57-58.  The court then asked
whether defendant sought to withdraw his guilty plea.

        THE COURT: [M]r. Akana is certainly not seeking to
        withdraw his guilty plea; am I correct?

        [DEFENSE COUNSEL]: That's correct, Your Honor.

Id. at 3, SER 58.

        When the court sought to clarify the basis of
defendant's objections, counsel said it was "on the contractual
basis of the plea agreement by [sic] itself."  Defense counsel
said he was considering how evidence would be presented to
support "specific findings by the court that [defendant] traded

        15

or trafficked in child pornography[.]" Id. at 3-4, SER 58-59.
Defendant agreed that the plea agreement allowed the government
to provide information about defendant's conduct.  But counsel
argued that the information should have been used only to fix a
point in the range applicable to a possession offense, and not to
trigger a higher range for a trafficking offense.

        The court responded that the plea agreement was not
ambiguous.  The court noted that the plea agreement stated that
the parties' stipulations were not binding.  The court noted,
"What happened here is that the Probation Office independently
made a calculation, and the plea agreement specifically
contemplates that that might happen.  It specifically says that I
don't have to go along with anything the parties have agreed to,
and I can look at the guidelines and at the facts of the case and
decide what it is that should apply, and you folks agree that I
can do that."  SER 60.

        Defense counsel agreed that the stipulations were not
binding on the court.  But he argued that the government should
not have defended the probation office's position, and instead
was required to stand silent on the application of the cross-
reference.  TR 5/12/03 at 6-7, SER 61-62.  The court responded
that the government had filed its memorandum only because the
defendant had first raised the issue of a breach; in the court's
words, the government "couldn't sit silent in the face of an

accusation by the defense that the government had somehow breached the plea agreement." Id. at 7, SER 62.

Defense counsel then moved away from the plea agreement, and instead attacked the factual basis for the application of the trafficking guideline. The court pointed out that defendant had not objected to paragraph 12 of the PSR, which said defendant had admitted "swapping child pornography about 20 times with other screen names with each swap usually containing between five to ten child pornography images." Id. at 9, SER 64. Defense counsel said that, while defendant had traded images, there was no proof that the images were child pornography. Defendant thus said he wished to object to paragraph 12. The court responded that if defendant disputed making the admission to agents, it would have an evidentiary hearing to determine whether the PSR was accurate.

The court then asked defense counsel what would be necessary to warrant the application of the trafficking guideline set forth in U.S.S.G. § 2G2.2. Defense counsel agreed that the guideline would apply if defendant had traded images of minors engaged in sexually explicit conduct. Id. at 10-11, SER 65-66. The court and counsel then had a discussion about whether defendant had admitted this to agents, as reflected in the PSR. The court alternatively said defendant had probably admitted trading images during the change of plea colloquy. The court

17

noted it had been a "difficult guilty plea," id. at 13, SER 68,
and said "it may be I don't need to receive evidence if I can
look at the transcript of the guilty plea colloquy, which may
have enough." Id. at 15, SER 70.

The court ultimately continued the sentencing to allow
defense counsel to consider his objections. The court then
clarified the remaining issues as follows:

> THE COURT: Okay. Now, since we're going to
> continue this thing I would like to address
> anything else that has to be addressed. As I
> understand it, you're attacking the accuracy
> of paragraph 12 .... And, assuming that you
> can successfully show that paragraph 12
> should be corrected, then on that ground you
> are asking that the base offense level be 15,
> which was the level to which the government
> and the defense had agreed in the plea
> agreement. Am I correct?
>
> [DEFENSE COUNSEL]: That's correct, Your
> Honor. And that would be the sole basis
> because, like I said, further study of the
> sentencing guidelines, I think pretty much
> every argument that we raised in our
> objection has been addressed[.]

SER 75-76 (emphasis added).

### viii. The July 18, 2003 Sentencing

The court reconvened on July 18, 2003. Defense counsel
said he had reviewed the transcript of the change of plea
hearing, and that defendant had admitted sending images to
others. Defendant then withdrew his remaining objections, as
follows.

18

> THE COURT: Okay.  So I'm going to -- are you withdrawing that objection, then, on the trafficking or --
>
> [DEFENSE COUNSEL]: I'm withdrawing the objection on the trafficking.
>
> THE COURT: Then are there any other objections that remain for me to rule on?  I don't think so.
>
> [DEFENSE COUNSEL]: No, I don't think so either.

TR 7/18/03 at 2-3, SER 80-81.  Defendant thus did not reassert any breach of the plea agreement, ask for specific performance of the agreement, or seek to withdraw his guilty plea.  Defense counsel instead withdrew his objections to the PSR, and explicitly agreed that the applicable guideline range was 46-57 months.[5]  The parties then addressed the court, with the government asking for the imposition of "the absolute minimum sentence that is required by law."  Id. at 13, SER 91.  The court imposed a 46 month sentence, the bottom of the guideline range.

This appeal followed.

---

[5]  The court adopted the PSR as its factual findings, and recited that the guideline was 46-57 months in custody.  SER 81-82.  The court then asked defense counsel, "[I]s there any dispute with any of those conclusions?"  Defense counsel responded, "No, Your Honor."  SER 82.

19

IV.   SUMMARY OF ARGUMENT

The government did not breach the plea agreement by
providing full information to the court.  The government had an
obligation to provide the court with all available information,
and such a disclosure was explicitly authorized under the plea
agreement.

Nor did the government breach its promise not to charge
defendant with the distribution of child pornography.  Defendant
pled guilty to the possession of child pornography.  Although the
court applied a cross-reference to the trafficking sentencing
guideline, defendant was not charged with a distribution offense.

The application of the cross-reference did not
constitute a constructive amendment of the indictment.  Defendant
was convicted on the theory that he knowingly possessed child
pornography.  The information provided during the Rule 11
colloquy and reflected in the PSR did not amend or enlarge that
charge.

Defendant waived his claim that the government breached
the plea agreement.  The plea agreement contained guideline
stipulations which were not binding upon the court.  The draft
presentence report revealed that the parties had overlooked a
mandatory cross-reference to a guideline which carried a higher
offense level.  Although the government then realized that the
parties' stipulation was obviously incorrect, it breached the

20

plea agreement by adopting the draft report's calculations.

While the government breached the agreement, defendant affirmatively waived or abandoned this claim. Defendant knew of all the facts concerning the breach before sentencing commenced. At the first sentencing hearing, defendant claimed the government had breached the plea agreement. When asked by the court whether he wished to withdraw his guilty plea, however, defendant said no. Defendant instead chose to challenge the evidentiary basis for the application of the trafficking guideline. The court then gave him additional time to review the record and consider his challenge. Two months later, after considering the matter, defendant withdrew all objections and agreed that the trafficking guideline applied. Defendant thereby voluntarily relinquished any claim that the government committed a breach of the plea agreement which led to the imposition of a more severe sentence.

If this court should determine that defendant did not waive his claim, the government agrees that the case should be remanded for resentencing.

V. ARGUMENT

    A. The Government Did Not Breach The Plea Agreement By Providing Full Information About Defendant's Activities To The Court.

        1. Standard of Review

A district court's factual findings concerning the terms of a plea agreement are reviewed for clear error. United

21

States v. Helmandollar, 852 F.2d 498, 501 (9th Cir. 1988).  A

claim that the government breached the terms of a plea agreement

is reviewed de novo.  United States v. Fisch, 863 F.2d 690 (9th

Cir. 1988).

### 2.  Argument

Defendant argues that the government breached the plea

agreement by advising the court that he trafficked in child

pornography.  The government plainly was authorized to provide

full information to the court and the probation office.

Paragraph 20 of the plea agreement provided as follows:

> 20.  Defendant understands that the prosecution
> will apprise the Court and the United States
> Probation Office of the nature, scope and extent
> of Defendant's conduct regarding the charges
> against him, related matters, and any matters in
> aggravation or mitigation relevant to the issues
> involved in sentencing.

SER 9.  This provision is consistent with the government's "duty

to ensure that the court has complete and accurate information"

for sentencing purposes.  United States v. Maldonado, 215 F.3d

1046, 1052 (9th Cir. 2000), cert. denied, 531 U.S. 1172 (2001).

See also United States v. Saxena, 229 F.3d 1, 6 (1st Cir. 2000)

(government has "unswerving duty to bring all facts relevant to

sentencing to the judge's attention").  The government thus did

not breach the plea agreement by providing investigative reports

to the probation office.

22

Defendant suggests that the government's reference to his trafficking of images during the change of plea hearing was unnecessary and constituted a breach of the plea agreement. The evidence was mentioned, however, only so defendant could make the requisite admissions during what the court later termed a "difficult guilty plea." SER 68. Indeed, the transcript reflects that the government had to be increasingly specific about the evidence before defendant could admit his conduct. The government initially made the simple assertion that defendant had accessed Internet chat rooms, downloaded files which contained child pornography, and saved them to his computer. The government further recited that, on or about April 13, 2002, defendant knowingly possessed child pornography on his computer. TR 9/20/02 at 15-16, SER 40-41.

When asked if he agreed with the government's statements, defendant equivocated.

> THE COURT: Okay. Mr. Akana, do you disagree with anything Mr. Tong [AUSA] said?
>
> (Counsel and defendant conferring.)
>
> THE DEFENDANT: Just how it's worded?
>
> (Counsel and defendant conferring.)
>
> THE DEFENDANT: It's just the wording, Your Honor, to say that I knew that I had the files on these dates or dates or around those dates.
>
> THE COURT: Okay. Is it the date that's a problem?

23

THE DEFENDANT: Yeah, the date and the -- just the
idea that I knew I had the files at that time.

TR 9/20/02 at 16-17; SER 41-42. In short, defendant was unable
to admit either when he possessed images, or what he possessed.

Defendant's statements necessitated a more detailed
summary of evidence which pinpointed when he possessed images,
and showed his knowledge of their contents. See United States v.
Lacy, 119 F.3d 742, 747-48 (9th Cir. 1997), cert. denied, 523
U.S. 1101 (1998)(possession offense requires proof that defendant
possessed materials which he knew contained unlawful depictions).
Noting that its recitation had been "conclusory," the government
said, "Let me tell you how the investigation unfolded. Maybe it
would be easier for Mr. Akana to admit to those facts." SER 42.
The government then indicated that defendant's screen name had
appeared on the buddy list of a mainland subject. Agents spoke
with defendant, who admitted going into chat rooms dealing with
the subject of child pornography and trading images. AOL then
produced information retrieved from defendant's account between
the beginning of April 2002 and April 13, 2002, which was about
the time he was unable to use his computer. The materials
included approximately 17 pictures of minors having sex. SER 43-
44. The government said it had also searched defendant's hard
drive, and found images which it believed were child pornography.
The government thus contended that, "on or about the middle of
April of 2002 [defendant] knowingly possessed computer files

24

which contained pictures of children involved in sex and which

pictures had been made through the use of minors involved in

sex."  SER 44-45.

Defense counsel responded to this recitation by asking

when defendant's computer had crashed, since defendant believed

he could not possess images once the computer was inoperable.

The court noted that the date of the possession might be a

problem, and suggested that the parties change the plea agreement

to reflect a date of the "middle of April 2002."[6]  SER 45-46.  At

that point, the prosecutor said, "I can be even more explicit if

it will help.  Maybe this will help."  SER 46.  The prosecutor

then said that AOL had turned over "three e-mails that were sent

by Mr. Akana on April 13 of 2002 to other people which had header

messages basically referencing the trading of child

pornography."[7]  SER 46.  The court gave defendant time to confer

with his attorney.  Following a break, defendant was able to

admit to his knowing possession of child pornography.[8]

_____

[6]    The parties made and initialed this change.  SER 3.

[7]    Although not specifically described at the change of
plea hearing, the e-mails had pictorial attachments, and message
headers of "trade ya," "trade," and "Got any butthole shots like
this?"  PSR at para. 15.

[8]    Although defendant made the requisite admissions, he
still had difficulty.  When questioned by the court, defendant
said he had received some files "unknowingly," and that he did
not know where some of his files had come from.  SER 50-51. When
defendant said some of the pictures came "as a surprise," the
court asked whether he had sent them to anybody.  Defendant

25

The foregoing demonstrates that the reference to trading was both relevant and necessary. The evidence was plainly relevant to show that defendant knowingly possessed child pornography on a specific date. Indeed, until advised of the evidence, defendant was not able to admit his knowing possession of images. The government was amply justified in bringing the information to the court's attention, for the purposes of a valid possession plea. It was not a breach of the plea agreement.

B.   The Government Did Not Charge Defendant With The Distribution Of Child Pornography, And There Was No Constructive Amendment Or Variance To The Indictment.

1.   Standard of Review

An allegation that the trial court allowed a constructive amendment of the indictment is reviewed de novo. United States v. Pisello, 877 F.2d 762, 764 (9th Cir. 1989).

2.   Argument

In the plea agreement, the government agreed not to charge defendant with the distribution of child pornography. It did not breach this promise. Defendant pled guilty to a one count indictment charging the possession of child pornography. Although his sentence was calculated under U.S.S.G. § 2G2.2, the guideline applicable to trafficking, that does not mean he was charged with the distribution of child pornography. Defendant

---

responded, "Yeah, I believe I did, yes." SER 50-51.

was instead charged and convicted of a possession offense. This offense carried a statutory maximum penalty of five years, rather than the maximum penalty of fifteen years which would apply to each of the distribution offenses with which defendant could have been charged. See 18 U.S.C. § 2252(b)(1) and (b)(2).

Although defendant was not charged with a distribution offense, he claims the court's use of evidence concerning his trafficking constituted a constructive amendment or variance of the indictment. "A constructive amendment of the indictment occurs when the evidence produced at trial supports a crime other than that charged in the indictment." United States v. Alvarez, 972 F.2d 1000, 1003 (9th Cir. 1992), cert. denied, 507 U.S. 977 (1993)(emphasis added). A variance in proof occurs when "the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir. 1984)(emphasis added).

The doctrines of constructive amendment and variance grow out of the principle that a felony prosecution may be initiated only by grand jury indictment. Stirone v. United States, 361 U.S. 212, 215 (1960). Once an indictment is returned, "its charges may not be broadened through amendment except by the grand jury itself." Id. at 215-16. A constructive amendment thus can be found "where the crime charged was

27

substantially altered <u>at trial</u>, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." <u>Von Stoll</u>, 726 F.2d at 586 (emphasis added).  Such an alteration can occur if the government presents facts materially different from those charged, <u>id.</u>, or if the jury instructions allow conviction on a theory not presented to the grand jury. <u>United States v. Vowiell</u>, 869 F.2d 1264, 1271 (9th Cir. 1989).

As the foregoing authorities reflect, a constructive amendment or variance typically is based on a changed theory <u>at trial</u>.  Defendant has not cited -- nor has the government found -- any case where the doctrines were applied to a guilty plea. In the context of a guilty plea, there is little dispute over the nature of the offense, and the elements necessary for conviction. In this case, defendant pled guilty to the possession charge set forth in the indictment.  During the change of plea hearing, the parties agreed to the essential elements of the offense.[9]  The evidence referenced during the change of plea hearing did not amend the charge, or its underlying theory or basis.  It simply

---

[9] The government said the essential elements of the offense were that the defendant possessed materials which contained child pornography, with defendant "then knowing that the particular files that he had showed kids involved in sexually explicit conduct, and that those files were made with the use of children under the age of 18." SER 40.  The government further said it had to prove that the images were either transported in interstate commerce, or were made, stored or produced with materials which had been transported in interstate commerce.  <u>Id.</u> When asked if he agreed to those elements, defense counsel said, "There's no dispute, Your Honor."  <u>Id.</u>

allowed the defendant to admit the essential elements of the
charged offense, namely, that he knowingly possessed child
pornography on a particular date.

Once defendant was convicted of possessing child
pornography, the court was free (and indeed obligated) to
consider all of defendant's activities at sentencing. See
U.S.S.G. § 1B1.3(a)(1)(A)(2001 ed.)(court must consider relevant
conduct), and U.S.S.G. § 1B1.4 (2001 ed.)(court "may consider,
without limitation, any information concerning the ... conduct of
the defendant, unless otherwise prohibited by law"). The court's
obligation to consider these activities could not be affected by
the plea agreement. In United States v. Flores-Payon, 942 F.2d
556 (9ᵗʰ Cir. 1991), for example, the government agreed not to
charge Miguel Flores-Payon with possession of a firearm during a
drug trafficking offense. During sentencing, the court applied a
two level enhancement because a firearm was present during a drug
trafficking offense. Flores-Payon appealed, arguing that such an
enhancement was barred by the plea agreement. The Ninth Circuit
affirmed.

> The government's decision to seek a
> superseding indictment charging defendant
> with possession of a firearm in violation of
> 18 U.S.C. § 924(c), with its minimum
> mandatory sentence of five years
> imprisonment, and the court's consideration
> of a weapon as a specific offense
> characteristic in computing the offense level
> for sentencing purposes are two entirely
> different matters.  Defendant successfully

>           bargained as to the first, but not as to the
>           second.  Indeed, the government could not
>           bargain away the district court's duty to
>           consider all relevant facts in applying the
>           Sentencing Guidelines.

Id. at 561-62.

In this case, defendant obtained the government's

promise not to charge him with distribution of child pornography

offenses.  Each such offense would have carried a higher

statutory maximum penalty than the possession offense for which

he was sentenced.  Consistent with the plea agreement, the

government did not bring any distribution charges.  This did not,

however, preclude the court from considering defendant's trading

of images in applying the guidelines.  See, e.g. United States v.

Paul, 274 F.3d 155, 161 (5th Cir. 2001), cert. denied, 535 U.S.

1002 (2002)(under U.S.S.G. § 1B1.3, court may consider

trafficking as "relevant conduct" in possession case).  The

court's consideration of this evidence did not result in a

constructive amendment or variance from the indictment.

C.   The Government Concedes It Breached The Plea
     Agreement By Supporting The Probation
     Office's Calculations, But Submits That
     Defendant Waived This Claim By Abandoning It
     In The District Court.

1.   Standard of Review

A defendant waives a challenge to a presentence report

by failing to object in the district court.  United States v.

Visman, 919 F.2d 1390, 1394 (9th Cir. 1990), cert. denied, 502

U.S. 969 (1991). "[W]ithdrawal of an objection is tantamount to a waiver of an issue for appeal." United States v. Manarite, 44 F.3d 1407, 1419 n. 18 (9th Cir.), cert. denied, 515 U.S. 1158 (1995), citing United States v. Montoya, 782 F.2d 1554, 1556 (11th Cir. 1986).

### 2. Argument

Defendant's final claim is that the government breached the plea agreement by supporting the probation office's sentencing calculations. Defendant argues that the government should have argued in favor of the parties' stipulations, or stood silent before the court. Defendant seems to suggest that the government's failure to present a "united front" to the court instead resulted in his being subject to a higher sentencing guideline range.

The government could not advocate a position which it knew was legally incorrect.[10] Nonetheless, the government concedes that it should not have supported the probation office's calculations. In retrospect, the government should have advised the court that it could not take a position on the PSR to avoid any potential breach of the plea agreement. Nonetheless, as will

_____

[10] As noted above, the case law clearly supported the application of the trafficking guideline. Even defendant ultimately conceded that the trafficking guideline was both legally and factually justified, and that the appropriate sentencing guideline range was 46-57 months. Defendant does not argue otherwise on appeal.

31

be shown below, defendant affirmatively abandoned any claim based
on the breach, and thereby waived the issue on appeal.

The breach of agreement occurred when the government
filed its May 5, 2003 memorandum prior to sentencing. As noted
above, the memorandum disputed allegations that the government
had inappropriately provided information to the court, and had
breached its promise not to charge defendant with a distribution
offense.[11] The government said it obviously was entitled to
provide information to the court, and that defendant had not been
charged with a distribution offense. Neither of these responses
constituted a breach.

The government went one step further, however. In
explaining its position, the government openly conceded that the
parties had stipulated that U.S.S.G. § 2G2.4 was the applicable
sentencing guideline. The government stated, however, that the
parties had overlooked the cross-reference in U.S.S.G.
§ 2G2.4(c)(2) which mandated the application of § 2G2.2 "[i]f the

---

[11]    The government could not let those serious allegations
go unanswered. When defendant objected to the filing of the
memorandum, the court noted, "I think the reason [the government]
responded was that in objecting to the PSR you accuse the
government of breaching the plea agreement; so they couldn't sit
silent in the face of an accusation by the defense that the
government had somehow breached the plea agreement. I think they
were forced to come forward to say, 'Hey, we didn't breach the
plea agreement. We're in compliance. If you don't like it,
argue the law when you go to court, convince the court that the
probation officer is wrong.' But they were, I think -- I think
they had to respond to the allegation that they had breached the
plea agreement." SER 62.

32

offense involved trafficking in material involving the sexual exploitation of a minor[.]"  The government pointed out that a review of the case law supported the draft PSR's application of this cross-reference, even though defendant had pled guilty only to a possession offense.  Although this correctly stated the law, the government should not have taken a position which was contrary to its earlier stipulation.

Having conceded this breach, however, the government respectfully submits that defendant voluntarily abandoned his claim.  A plea bargain may be enforced through specific performance, or a defendant may be allowed to withdraw his guilty plea.  Santobello v. New York, 404 U.S. 257, 263 (1971). Defendant sought neither remedy here.  Defendant knew of all the facts surrounding the breach; indeed, he asserted a breach during the initial sentencing hearing on May 12, 2003.  Knowing of defendant's claim, the court asked whether he sought to withdraw his guilty plea.  Defendant said no.  Defense counsel then told the court that the cross-reference to the trafficking guideline would apply if defendant had traded child pornography, but said the evidence did not justify that conclusion.  SER 65-66.  In short, defendant turned away from the breach of agreement claim, and focused instead on an evidentiary challenge.

The court continued the hearing, and gave defendant time to consider a course of action.  The hearing was reconvened

33

on July 18, 2003, two months later.  Prior to that hearing,

defendant still had the option of seeking to withdraw his guilty

plea, and then going to trial or negotiating a new plea

agreement.  Defendant alternatively could have asked for specific

performance, demanding that the government stand silent or object

to the PSR, as he does now on appeal.  Defendant did not pursue

either course.  Defense counsel instead conceded that the

evidence proved that defendant had traded child pornography.

Defendant thus withdrew his objections to the application of the

trafficking guideline.

After withdrawing his objections to the PSR, defendant

then explicitly agreed that the correct sentencing range was 46-

57 months.

> THE COURT: So I will adopt the Presentence
> Investigation Report, and this document will
> serve as my set of findings for purposes of
> sentencing...
>
> [I] will accept the plea agreement, and I have the
> following conclusions: The total offense level is
> 23.  The criminal history category is I.  By
> statute the maximum period in custody is five
> years.  The guideline range is 46 to 57 months in
> custody....
>
> At this point, Mr. Ostendorp [defense counsel], is
> there any dispute with any of those conclusions?
>
> [DEFENSE COUNSEL]: No, Your Honor.

34

TR 7/18/03 at 2-4, SER 80-82.  Defendant then sought mitigation
by seeking a downward departure based on his poor health.[12]

Notwithstanding the foregoing statements, defendant now
urges a breach of plea agreement, and argues that he should have
faced a guideline range of 27-33 months.  The government submits
that defendant voluntarily waived and abandoned these claims.
Waiver is the "intentional relinquishment or abandonment of a
known right."  United States v. Olano, 507 U.S. 725, 733 (1993).
"[W]ithdrawal of an objection is tantamount to a waiver of an
issue for appeal."  United States v. Manarite, 44 F.3d 1407, 1419
n. 18 (9th Cir.), cert. denied, 515 U.S. 1158 (1995), citing
United States v. Montoya, 782 F.2d 1554, 1556 (11th Cir. 1986).

In this case, defendant withdrew and abandoned the very
claims which he now asserts.  At the May 12, 2003 hearing,
defendant objected to the PSR, arguing that the guideline range
had been inflated by the government's breach of plea agreement.
By the end of the hearing, defendant said the only objection
which he still asserted was to the factual accuracy of the PSR;
in his words, "that would be the sole basis, because ... I think
pretty much every argument that we raised in our objection has
been addressed."  SER 75-76.  At the July 18, 2003 hearing,
defendant withdrew that objection, and agreed that the guideline

---

[12]    The motion for downward departure had been filed on
June 3, 2003.   CR 23.

range was 46-57 months. SER 80-82. This is tantamount to a waiver of any objection to the PSR on appeal. c.f. United States v. Visman, 919 F.2d 1390, 1393-94 (9th Cir. 1990)(where defendant was asked if he objected to PSR computations and said, "No, we concur," challenge to calculations was waived on appeal).[13]

If this court determines that defendant did not waive his claim, the government agrees the case should be remanded for resentencing. It is difficult, however, to determine what remedy would be appropriate if the court finds no waiver. Defendant previously agreed that the applicable guideline range was 46-57 months, and he has already received the bottom of that range. On appeal, defendant has not challenged the legal propriety of the court's guideline calculations. It would therefore appear that defendant wants the case remanded, and to be sentenced under a lesser range which even he concedes is incorrect. While the government regrets its role in the situation, such a remedy seems inappropriate.

---

[13]    It would appear that defendant recognized the clear applicability of the trafficking guideline, as well as the futility of challenging his admissions to both agents and the court. Defendant also apparently made a conscious choice to seek relief from the appropriate guideline range by filing a motion for downward departure.

VI.  CONCLUSION

       The government concedes it breached the plea agreement.
The government did not, however, act in bad faith or engage in
any subterfuge.  Defendant was fully aware of the government's
actions, and initially asserted an objection.  Defendant
thereafter withdrew his objection and agreed to the very
guideline range under which he was sentenced.  Defendant now
seeks to reinstate his claims, and essentially to be sentenced
under the wrong guideline sentencing range.  Although the
government regrets its breach of plea agreement, it respectfully
submits that defendant has waived his claims.  The judgment thus
should be affirmed.

       Dated: Honolulu, Hawaii, April 20, 2004.

                       EDWARD H. KUBO, JR.
                       United States Attorney
                       District of Hawaii

             By  _____
                 LAWRENCE L. TONG
                 Assistant U.S. Attorney

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type-Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    __X__  this brief contains __8,346__ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

    _____  this brief uses monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    _____  this brief has been prepared in a proportionally-spaced typeface using _____ in _____,
            Name & version of word processing program        Font size & name of type style

    or

    __X__  this brief has been prepared in a monospaced typeface using __WordPerfect 9__ with __Courier New 12 pt.__.
            Name & version of word processing program        Font size & name of type style

    (s) _____

    Attorney for __UNITED STATES OF AMERICA__

    Dated: __4/21/04_____

(Form 6, 12/1/02)

STATEMENT OF RELATED CASES

Counsel for the United States is not aware of any related cases.

Dated: Honolulu, Hawaii, April 20, 2004.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By_____

LAWRENCE L. TONG
Assistant U.S. Attorney

38

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that two (2) true and correct copies of the foregoing document was duly served upon the following person by depositing said copy in the United States mail, postage prepaid, on April 21 , 2004, as set forth below:

        DE ANNA S. DOTSON, ESQ.
        P.O. Box 700953
        Kapolei, HI 96709-0953
           Attorney for Defendant-Appellant
           KEITH K. AKANA

        DATED: April 21 , 2004, at Honolulu, Hawaii.